**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JEFFREY C. SKEENS, et al.,

                Plaintiffs,

v.                               CIVIL ACTION NO.   2:14-cv-27781

ALPHA NATURAL RESOURCES, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendants Alpha Natural Resources, Inc. and Alpha Appalachia Holdings, Inc.'s Motion to Dismiss Plaintiffs' Complaint* (Document 9), the *Memorandum in Support* (Document 10), the *Plaintiffs' Response and Memorandum of Law on Behalf of the Estate Beneficiaries in Opposition to Defendants' Alpha Natural Resources, Inc. and Alpha Appalachia Holdings, Inc.'s Motion to Dismiss Plaintiff's Complaint* (Document 12), and *Defendants Alpha Natural Resources, Inc. and Alpha Appalachia Holdings, Inc.'s Reply in Support of Their Motion to Dismiss Plaintiffs' Complaint* (Document 16).   In addition, the Court has reviewed *Plaintiffs' Motion for Leave to File a Surreply Memorandum to Reply to the Defendant's Motion to Dismiss as the Motion to Dismiss, By Rule, Has Now Been Co[n]verted to a Motion for Summary Judgment* (Document 17), *Defendants' Response in Opposition to Plaintiffs' Motion for Leave to File a Surreply Memorandum* (Document 18), and the *Plaintiffs' Reply to the Defendants' Response in Opposition to Plaintiffs' Motion for Leave to File a Surreply Memorandum* (Document 19).   For

the reasons stated herein, the Court finds that the Defendant's motion must be granted, and the Plaintiffs' motion for leave to file should be denied.

## FACTS AND PROCEDURAL HISTORY

On April 5, 2010, in Montcoal, West Virginia, twenty-nine miners died in an explosion that occurred at Massey Energy Company's Upper Big Branch (UBB) mine.   The Plaintiffs in this case are administrators of the estates of three of those miners.[1]   This case relates to a Non-Prosecution Agreement (NPA) entered into by the United States and Alpha Natural Resources, Inc., and Alpha Appalachia Holdings, Inc. (collectively, "Alpha"), regarding the UBB explosion.

This is the third action brought by these Plaintiffs regarding the NPA.   The first suit, initiated on October 19, 2012, was dismissed without prejudice for lack of jurisdiction.   (*See*, Civ. Action No. 5:12-cv-06854.)   The Plaintiffs filed their second suit on July 17, 2013.   (*See,* Civ. Action No. 5:13-cv-20595.)   This Court issued an opinion finding that dismissal with prejudice on the merits was warranted.   However, following the Plaintiffs' appeal, the Fourth Circuit Court of Appeals remanded, instructing the Court to dismiss without prejudice due to the Plaintiffs' failure to establish federal jurisdiction.   On November 7, 2014, shortly after the Court entered an order dismissing without prejudice, the Plaintiffs initiated the present action.   In each complaint, the Plaintiffs refined their claims, but the essential allegation has remained the same:  that the NPA established a right to restitution of $1,500,000 for the family of each deceased miner, and the civil settlements received prior to the Government and Alpha entering into the NPA do not satisfy that obligation.

---

[1] The Plaintiffs seek to act on behalf of a class of nine of the miners' estates.

Following the UBB explosion, the United States Attorney's Office for the Southern District of West Virginia and the United States Department of Justice (collectively referred to as "the Government" or "the United States") initiated a criminal investigation.  On June 1, 2011, Alpha acquired Massey and its affiliates.  On December 6, 2011, the Government and Alpha entered into the NPA.  (NPA, att'd as Ex. A to Pl.'s Compl.)  In consideration for Alpha's promise to perform the obligations therein, the Government agreed not to criminally prosecute or bring any civil action against Alpha and its affiliates in connection with the Government's investigation into the UBB mine explosion.  (*Id.* ¶ 11).   The NPA provides in pertinent part:

> As restitution for the victims injured in the UBB explosion, Alpha agrees to pay, or to cause Massey or its affiliates to pay, at least $1,500,000 to each of the families of the fallen miners and two individuals affected by the UBB explosion. The total restitution payment shall be $46,500,000, of which (a) $16,500,000 was previously or anticipated to be paid as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C; and (b) $30,000,000 will be paid to the families of the fallen miners and two individuals affected by the UBB explosion in the actions in Appendix D who have not resolved their claims, consisting of payment to each of (i) $500,000 to be paid within 15 days of the execution of this Agreement, and (ii) $1,000,000 which will be payable at the time of the resolution of pending civil claims through settlement, judgment, or otherwise, and as part of such civil resolution to the extent that civil resolution results in a monetary recovery. Alpha will make the payment described in subparagraph (b) above into a fund established to pay those families of the fallen miners and the individuals.

 (*Id.* ¶ 8).   All of the Plaintiffs were named in Appendix C.

Appendix C contains the miners' names, the jurisdiction in which their families' settlements took place, and the relevant civil case numbers for those settlements.   The Plaintiffs allege that Alpha "has not paid or caused to be paid One Million Five Hundred Thousand Dollars ($1,500,000.00) in restitution to nine (9) of the families of the Fallen Miners."   (Compl. ¶ 20.)

The Plaintiffs further allege that "the Administrators of eleven of the fallen miners [including the miners whose estates the Plaintiffs represent] settled wrongful death claims with Massey" before Alpha and the Government entered into the NPA.   (*Id.* ¶¶ 61; 73.)   They assert that the settlements were between Massey and the wrongful death beneficiaries, not between Alpha and estate beneficiaries, and therefore do not satisfy the requirements of the NPA.   (*Id.* ¶¶ 62–72.)

The Plaintiffs additionally set forth allegations regarding the treatment of those identified in Appendix D.   They allege that "one group of fallen family members were paid the publically announced $1,500,000 in excess of monies paid to resolve wrongful death claims while a second group, including the plaintiffs, has not received any restitution payment."   (*Id.* at ¶ 87.)   The Plaintiffs allege that the initial $500,000 paid to the families of the miners listed in Appendix D shortly after the signing of the NPA "was not paid as part of a civil wrongful death settlement but was paid to the estates of the deceased miners to be distributed to the 'families' as set forth in the [NPA.]"   (*Id.* at ¶ 95.)   The Plaintiffs attach an affidavit of Tiffany Sovine, the former daughter-in-law of Howard D. Payne, one of the miners listed in Appendix D.   (Sovine Aff., att'd as Ex. C to Pl.'s Compl.)   She reports that her children were financially dependent on their grandfather, Mr. Payne.   She made a claim on their behalf for inclusion in any wrongful death distribution, which was finalized when the beneficiaries reached a settlement in 2012.   However, she reports that "Alpha paid $500,000.00 to the Estate of Howard D. Payne…[which] was divided equally between" Mr. Payne's two children.   (*Id.* at ¶ 11-12.)

The Plaintiffs make the following claims: Count I – Enforcement of Contractual Obligation; and Count II – Failure to Pay at Least Five Hundred Thousand Dollars ($500,000.00) in Restitution to the Estates of the Fallen Eleven.   Both counts involve enforcement of the NPA.

Count II is based on the asserted disparity between the treatment of those in Appendix C and those in Appendix D.

The Defendants filed a motion to dismiss on December 8, 2014. Earlier the same day, they filed a motion to seal the settlement agreements reached between the Plaintiffs and Massey in order to provide them as exhibits to their motion to dismiss. (Documents 6 & 7). The Plaintiffs promptly objected to the motion to seal, contending that the settlement agreements were irrelevant because they related to wrongful death claims, and estate beneficiaries are a distinct group. On December 22, 2014, the Court granted the Defendants' motion to seal, explaining that the private settlement documents should remain under seal, and that their relevancy would be evaluated upon review of the motion to dismiss. (Document 14.)[2] On January 6, 2015, the Plaintiffs filed a motion for leave to file a surreply, which the Defendants opposed.

## JURISDICTION

Diversity jurisdiction generally requires that no plaintiff be a citizen of the same state as any defendant and that the amount in controversy be in excess of $75,000. 28 U.S.C. § 1332(a)(1); *Cent. W.Va. Energy Co. v. Mt. St. Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (establishing that, except for certain class actions, Section 1332 requires complete diversity among parties). A corporation is a citizen of its state(s) of incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1). "Principal place of business" means the nerve center of the corporation, "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

---

2 The Defendants neglected to attach the settlements after the Court's order granting the motion to seal. Following a Court order (Document 23) they attached a sealed, unredacted version of the memorandum of law in support of their motion to dismiss, which contains quotations from the settlement agreements (Document 24) and the settlement agreements themselves (Document 25).

The Plaintiffs have pled facts sufficient to establish federal diversity jurisdiction. They allege that each Plaintiff is a West Virginia resident. They further allege that Alpha Natural Resources, Inc., is a Virginia corporation with a principal place of business in Virginia, and that Alpha Appalachia Holdings, Inc., is a Delaware corporation with its principal place of business in Virginia. Finally, they allege that the amount in controversy exceeds $75,000. The Defendants do not contest federal jurisdiction.

## CONVERSION PURSUANT TO RULE 12(d)(6)

The Plaintiffs' motion to file a surreply is based on their contention that the Court's granting of a motion to seal settlement agreements, which the Defendants sought to attach to their motion to dismiss, converted the motion to dismiss to a motion for summary judgment. Alpha opposes the motion, arguing that the settlement agreements are integral to the complaint. When a party files documents external to the complaint in a motion to dismiss, the Court may (a) consider those documents if they are integral to the complaint, explicitly relied on in the complaint, and their authenticity has not been challenged; (b) decline to consider the documents; or (c) convert the motion to a motion for summary judgment and permit reasonable discovery. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012).

The Court declines the opportunity to convert the Defendants' motion to dismiss to a motion for summary judgment. As explained below, dismissal is warranted on the plain language of the NPA itself, absent consideration of the settlement agreements. Further, the Court finds that the settlement agreements can appropriately be considered because the Plaintiffs relied on them in the complaint. Numerous paragraphs of the complaint set forth the Plaintiffs' theory of the case

by addressing the settlements: that the wrongful death settlements are unrelated to the requirements of the NPA because the recipients of wrongful death benefits are different from the recipients of restitution.   Furthermore, the NPA itself expressly references the settlements, even citing the relevant civil case numbers for each fallen miner.   Thus, the Court finds that the Plaintiffs' motion to file a surreply should be denied.[3]

## STANDARD OF REVIEW

### A. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).    Additionally, allegations "must be simple, concise, and direct." Fed.R.Civ.P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not]

---

3 The Court has, however, considered the substantive arguments made in the Plaintiffs' motion for leave to file a surreply and their reply to the Defendants' opposition in evaluating the motion to dismiss.   The Defendants do not object to consideration of those arguments, which are parallel to the Plaintiffs' arguments in their response to the motion to dismiss.

suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'"   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

8

### B. *12(b)(7)*

Rule 12(b)(7) of the Federal Rules of Civil Procedure permits a party to assert a defense by motion for failure to join a party required under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19 provides in pertinent part that a party is required in an action if: "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect their interests; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). If joinder of the required party is feasible, and the existing parties have failed to join it, the party may be joined by court order. Fed. R. Civ. P. 19(a)(2).

Dismissal based on nonjoinder is disfavored. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999). Therefore, courts conduct a two-step inquiry. First, courts consider whether a party is necessary "because of its relationship to the matter under consideration." *Id.* at 440. "If a party is necessary, it will be ordered into the action." *Id.* Only when a party cannot be joined will the court proceed to the next step to "determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *Id.* (noting that joinder is not feasible in a diversity case if the required party would destroy diversity jurisdiction).

## DISCUSSION

### A. *Standing and Prosecutorial Discretion*

The Defendants devote only a brief portion of their motion to dismiss to questioning whether the Plaintiffs have standing to pursue their claims. They argue that the Plaintiffs cannot

bring suit under the NPA because they are not parties to the agreement.  Intertwined with questioning the Plaintiffs' standing under traditional principles of contract law, the Defendants assert that the NPA itself "expressly provides that it is the Government who is to determine whether Alpha complies with or breaches the agreement, and that such determination 'will not be subject to review in any judicial proceeding.'"  (Def.s' Mem. in Supp. of Mot. to Dismiss, at 19) (citing NPA, ¶ 13.)  The Defendants argue that in the particular context of a non-prosecution agreement, judicial review of third-party claims would interfere with discretionary prosecutorial decisions.  The Plaintiffs respond that they have standing to enforce the NPA as third-party beneficiaries and have alleged sufficient facts to proceed with discovery.

In West Virginia, a plaintiff seeking to recover under a contract as a third-party beneficiary must "demonstrate that the contracting parties intended to confer a benefit upon the plaintiff by their contract."  Syl. Pt. 2, *Woodford v. Glenville State Coll. Hous. Corp.*, 225 S.E.2d 671, 672 (W. Va. 1976).  The NPA provided for a benefit to the families of the fallen miners by establishing a minimum amount to be included in civil settlements.

However, the specific provisions of the NPA are not strictly enforceable.  Unlike a contract in which parties exchange goods, services, or money, the NPA sets forth conditions under which the United States would not prosecute Alpha.   If Alpha did not fulfill the requirements, the United States could choose to prosecute.  The NPA specifically provides for a two-year period (now expired) during which the Government would monitor Alpha's compliance with the terms of the NPA.   (NPA ¶ 13.)   It further provides that "the Government's final determination will not be subject to review in any judicial proceeding."[4]   (*Id.*)   It was entirely within the Government's

_____

4 It is not clear that the provision insulating the United States' determination with respect to any breach of the NPA from judicial review would withstand a challenge from a defendant.  *See, e.g.*, *United States v. Gerant*, 995 F.2d 505,

discretion to choose whether or not to prosecute Alpha following any alleged breach of the NPA. Thus, though the NPA was public and provided benefits to the victims' families (among others), enforcement of the NPA remained squarely within the United States' prosecutorial discretion. The Court finds dismissal appropriate due to the Plaintiffs' lack of standing to enforce the NPA. Assuming *arguendo* that standing exists, however, dismissal is warranted for failure to state a claim based on both the plain language of the NPA and the settlement agreements signed by each Plaintiff.

### B.  The NPA

Substantively, Alpha moves to dismiss based on the unambiguous terms of the NPA.  It argues that the NPA simply "provided a $1,500,000 floor for civil payments Alpha had made or would make in the future to the families of those killed or seriously injured in the explosion." (Def.s' Mem. in Supp. of Mot. to Dismiss at 7.)   Alpha states that "[t]he NPA does not provide for any further compensation…to those listed in Appendix C; it simply acknowledges…that they have already received the money."  (*Id.* at 11.)  The Plaintiffs respond that the NPA provides for restitution to families of the victims, and argues that criminal restitution payments, by statute, go to estate beneficiaries.   Therefore, they argue that civil wrongful death settlements do not and cannot satisfy an obligation to pay restitution.   Alpha reiterates that the NPA states that these Plaintiffs already received the 'restitution' as part of their civil settlements.   Alpha rejects the Plaintiffs' attempt to distinguish between estate beneficiaries and wrongful death beneficiaries, emphasizing that the NPA contains no such distinction.

---

508 (4th Cir. 1993) (requiring proof of any breach by a preponderance of the evidence, and noting that "[a]n immunity agreement invokes the same constitutional due process concerns as a plea agreement").  Nonetheless, the United States' decision *not* to prosecute following an alleged breach of the agreement falls within its discretionary role, as does the decision to enter into the NPA.

It is an elementary principle of contract law that courts must give effect to the written terms of a contract that unambiguously expresses the intent of the parties.[5]  11 Williston on Contracts § 30:6 (4th ed.).  "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."  *Zimmerer v. Romano*, 679 S.E.2d 601, 610 (W. Va. 2009) (quoting   Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company,* 128 S.E.2d 626 ( W. Va. 1963)).   Trial courts are to construe unambiguous contracts according to their plain meaning.  *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 468 S.E.2d 712, 715 (W. Va. 1996).   "It is also well settled that the words of an agreement should be given their natural and ordinary meaning, because the parties presumably used the words in the sense in which they were generally understood."  *Bennett v. Dove*, 277 S.E.2d 617, 618-19 (W. Va. 1981).

The language of the NPA is clear and unambiguous.   The terms of the NPA simply do not provide for additional recovery for the families or estates of miners listed in Appendix C, including these Plaintiffs.   The NPA states: "$16,500,000 was previously or anticipated to be paid as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C."   (NPA ¶ 8.)   The meaning is clear and unmistakable: $16,500,000 of the agreed-upon $46,500,000 in payments to victims' families had already been accounted for in settlements pre-dating the NPA.   Massey and/or Alpha had previously paid some of that money, and had committed to paying some of it in the future.   If there could be any doubt after reading ¶ 8 of the NPA, the information in Appendix C would resolve that doubt.   Appendix C lists the names of the miners whose families had reached settlements, the county where the settlements were approved, and includes the case

5 In this case, the parties to the contract were Alpha and the Government.   It is solely their objective intent that the Court must consider in reading the NPA.   The interests of these Plaintiffs, and others similarly situated, are relevant only insofar as the parties to the NPA may have considered those interests.

numbers attached to those settlements.   The settlements reached in those cases are clearly those referenced in ¶ 8 as accounting for $16,500,000 of the money to be paid to families of miners.

Read in full, the pertinent portion of the NPA sets a $1,500,000 minimum civil recovery for each of the families of the UBB victims.   (NPA ¶ 8.)   Those listed in Appendix C had already reached settlements at or above the minimum; those in Appendix D had not.   (*Id.*)   Those listed in Appendix D "who [had] not resolved their claims" were to receive $500,000 within fifteen days, and $1,000,000 "at the time of the resolution of pending civil claims…**and as part of such civil resolution**."   (*Id.*) (emphasis added.)   The NPA thereby plainly connects the provision for payments to victims' families to any civil settlements reached.   Hence, when a family received at least $1,500,000, the provision in the NPA dealing with restitution to the families was satisfied as to that family.

The Plaintiffs' focus in this suit is on an asserted distinction between estate beneficiaries and wrongful death beneficiaries.   Even if it were true that the settlements were exclusively wrongful death settlements, the NPA states that those settlements satisfy its restitution requirements.   The NPA is a contract, and the Court must apply its terms.   Nowhere does the NPA suggest that the restitution is to be paid to estate beneficiaries, as opposed to those family members who reached civil settlements.[6]   Instead, it specifically references the civil settlements the Plaintiffs now ask the Court to disregard.   Statutory rules regarding post-conviction criminal restitution are not applicable to the minimum civil settlements required by the NPA.

---

6 West Virginia Code § 55-7-6, setting forth the appropriate distribution of damages, provides for distribution "to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents, and any persons who were financially dependent upon the decedent at the time of his or her death" or, "[i]f there are no such survivors, then the damages shall be distributed in accordance with the decedent's will, or if there is no will, in accordance with the laws of descent and distribution…"   W. Va. Code § 55-7-6(b).   It would be a rare wrongful death case that did not include distributions to estate beneficiaries.

The Plaintiffs make several allegations regarding the recovery of other miners' families. (*See, e.g.,* Compl. ¶¶ 36, 41–46, 94; Sovine Aff.)   Any agreements or payments between Alpha and other miners have no impact on the rights of these Plaintiffs.   At best, such payments would provide extrinsic evidence to support an alternative interpretation of the NPA—which, as discussed above, could not be considered in this case because the plain meaning of the unambiguous contract controls.

The Plaintiffs have failed to assert a plausible claim for relief with respect to either count of the complaint, as both are based on the alleged right to restitution contained in the NPA.   The NPA does not distinguish between different types of beneficiaries or the various capacities in which family members or representatives of the fallen miners could act.   The Government has discretion in handling criminal prosecution, and private citizens do not have a compensable right to the prosecution or settlement of criminal claims.[7]   Therefore, the only potential source of any right to further compensation is within the NPA as a contract.   The Plaintiffs' statutory arguments are unavailing.   The plain language of the NPA provides that each miner's family must receive at least $1,500,000 in a civil settlement.   The NPA further states that settlements already reached with the families of miners listed in Appendix C, including these Plaintiffs, satisfy that requirement.   In short, the Plaintiffs have not alleged facts that constitute a violation of the terms of the NPA.   Because the NPA merely recognizes that these Plaintiffs have received settlements, without granting them a right to anything, they could not allege facts that would state a cause of action under the NPA.   Thus, the Defendants' motion to dismiss with prejudice must be granted.

---

7 Private citizens may, as these Plaintiffs did, seek relief and compensation for the harm they suffer through civil suits and private settlements.

*C. The Settlement Agreements*[8]

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

8  This section is redacted because it contains discussion of confidential settlement agreements.

[redacted]

[redacted]

[redacted]

[redacted]

9 The Court observes that the same counsel now representing the Plaintiffs represented Mr. Skeens during the referenced settlement agreements.



*D. Failure to Join a Required Party*

Alpha asserts that the United States is a required party, and urges dismissal under Rule 12(b)(7) based on its non-inclusion.   It argues that the United States not only has an interest as a party to the NPA, but also has the sole responsibility for determining whether Alpha complied with the NPA.   The Plaintiffs respond that the United States is not a necessary party because it "is immune from being a party to litigation pursuant to Title 18 § 3771(6)."   (Pl.s' Resp. at 19.)

Neither party has asserted that joinder of the United States is not feasible, and joinder of the United States would not interfere with federal jurisdiction.   Therefore, if the United States were a required party, the proper course would be to order its joinder.   Because this action must be

dismissed,[10] due to the Plaintiffs' lack of standing to enforce the NPA, the plain language of the NPA, and the general releases contained in the settlement agreements, the Court finds it unnecessary to consider whether the United States must be joined.

## CONCLUSION

Wherefore, after careful consideration and for the reasons stated herein, the Court does hereby **ORDER** that the *Plaintiffs' Motion for Leave to File a Surreply Memorandum to Reply to the Defendant's Motion to Dismiss as the Motion to Dismiss, By Rule, Has Now Been Co[n]verted to a Motion for Summary Judgment* (Document 17) be **DENIED.**  The Court further **ORDERS** that *Defendants Alpha Natural Resources, Inc. and Alpha Appalachia Holdings, Inc.'s Motion to Dismiss Plaintiffs' Complaint* (Document 9) be **GRANTED**.  Finally, the Court **ORDERS** that the Plaintiffs' Complaint be **DISMISSED WITH PREJUDICE** and that this matter be **STRICKEN** from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        April 7, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

10 The Court notes that there is no risk that the opinion herein would interfere with the United States' rights under the NPA.

18